IN ARBITRATION

| | | |
|---|---|---|
| AURIKA A. GRYNKO, | ) | |
| | ) | |
| Claimant | ) | RICHARD M. MARKUS, |
| | ) | (Sole Arbitrator) |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| SEARS ROEBUCK AND CO., | ) | GRANTING REPSONDENT'S |
| | ) | SUUMARY JUDGMENT MOTION |
| Respondent | ) | AND DISMISSING ALL CLAIMS |

Since 2001 the claimant has been the respondent's employee at its retail store in North Olmsted, Ohio.  On November 8, 2013, she filed *pro se*[1] discrimination claims against the respondent in the United States District Court for the Northern District of Ohio as that court's Case No. 1:13CV2482.  Her Complaint alleges that her employer subjected her to adverse working conditions and paid her less because of her Ukranian origin.  It contains claims for violation of the federal Civil Rights Act of 1964 [42 U.S.C. 2000e-2(a)]; denial of her constitutional rights and privileges [42 U.S.C. 1983]; conspiracy to deny her constitutional rights to equal protection of the laws and equal privileges and immunities in violation of 18 U.S.C. 241; and intentional infliction of emotional distress.[2]

On January 8, 2014, the district court granted the defendant employer's motion to stay proceedings for that case and ordered the claimant to pursue those claims in binding arbitration.  On January 14, 2014, she served the respondent with her Arbitration Demand.  By an exchange of letters in February 2014 the parties agreed to select this arbitrator.

---

[1]   Despite her participation as a *pro se* party, the form and content for many of her documents strongly suggest that someone with formal legal training has assisted her -- if that other person did not actually author those documents. "Ghost" drafting or filing by someone engaged in the unauthorized practice of law or by a duly licensed attorney can be the basis for contempt orders or other sanctions.

[2]   This arbitrator limits his decision to the claims in the federal court Complaint.  He lacks jurisdiction to consider or decide any other claims.  He likewise lacks authority to decide whether the claimant could have asserted any other claims in that Complaint or whether her failure to assert them there precludes their later assertion elsewhere.

*Exhibit A*

On March 31, this arbitrator conducted a Case Management Conference and issued a resulting scheduling order.  On April 8, 2014, the respondent served its Answer to the claimant's Complaint for the arbitration proceeding.   Thereafter, both parties engaged in discovery and obtained this arbitrator's orders for related disagreements.

On June 26, 2014, the respondent served a Motion for Summary Judgment, which it supported with a legal memorandum and the following evidentiary materials: (a) an affidavit by Mel Huggins, the store manager where the respondent employs the claimant; (b) an affidavit by Catherine Miller, an employee of the respondent's corporate office, who authenticated the respondent's records for persons whom the respondent listed in her interrogatory answers as co-employees that  receive greater compensation; and (c) an unrelated court decision.

On August 11, 2014, with leave to delay her response, the claimant served her Opposition to that motion, which she supports with a legal brief and the following evidentiary materials: (a) her own affidavit; and (b) a deposition by Sylvia A. Baracc, a human resources employee at the claimant's store; (c) extracts from a deposition by Vick I. Nunnary, one of the claimant's supervisors, and (d) unauthenticated "Exhibits" that purport to be [1] the claimant's employment records, [2] the store's employment procedures, and [3] her medical and psychiatric history.[3]

On August 22, 2014, the respondent served its Reply Brief in further support of its summary judgment motion, which it supported with a second affidavit from Mel Huggins, the store manager.  On August 27, 2014, with leave to file a surreply, the claimant served a Rebuttal Memorandum in Opposition to the respondent's motion which she supported with additional unauthenticated documents which purport to be email messages, an arbitration demand sheet, and shift assignment materials.  The motion is now ripe for decision.

---

[3]  Pursuant to Civil Rule 56(c), this Opinion and Order disregards all unauthenticated materials.  However, this arbitrator would reach the same decision if he considered those materials.

## THE EMPLOYMENT DISCRIMINATION CLAIM

There is no genuine issue of material fact for this claim. The respondent is entitled to a dismissal judgment for this claim as a matter of law.

The respondent's evidentiary materials demonstrate that the claimant's compensation has been and remains the same as all other similarly situated employees. The claimant provides no contrary evidence beyond her own unsupported perceptions and inadmissible hearsay from persons with no personal knowledge about those facts. Further, there is no credible evidence that anyone considered the claimant's national origin as a factor that affected her compensation.

Moreover, the respondent's uncontradicted evidence establishes that the respondent's corporate offices in another state determine and control compensation for all its employees at that store, and that no Ohio employee has authority to modify those compensation terms. There is no evidence to suggest, let alone support, that anyone in that corporate office had any reason to know or even speculate about the claimant's national origin.

The claimant also contends that the respondent subjected her to adverse working conditions over the thirteen years of her employment there, because one or more co-employees (a) made a few disconnected derogatory comments, (b) failed to respond to her sporadic medical needs, (c) declined to include her in some social activities, and (d) occasionally gave her less favorable shift assignments. There is no evidence to show that her national origin was a factor for most of that alleged conduct. However, these relatively rare, disconnected events do not separately or collectively constitute actionable discrimination.

Moreover, she provides no evidence that she complained about any adverse working conditions to an offending co-employee's supervisor, or that the responsible supervisor failed to take appropriate corrective action. The respondent's evidentiary material supports a rational

business explanation for its shift assignments, and the claimant failed to demonstrate that the respondent's explanation is pretextual.

### THE CIVIL RIGHTS CLAIM UNDER 42 U.S.C. 1983

On its face, this claim has no merit. This statutory remedy applies solely to conduct by government personnel or pursuant to colorable governmental authority:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

The respondent is a private commercial enterprise. There is no evidence that any conduct by any of respondent's employees relating to the claimant or her employment had any actual or pretended governmental involvement.

Indeed, if the respondent had been a governmental entity, there is no evidence that any of its employees deprived the defendant of any constitutional rights.

The respondent is entitled to judgment as a matter of law on this claim.

### THE CONSPIRACY CLAIM FOR VIOLATIONS OF 18 U.S.C. 241

Here again, the claim lacks merit on its face. The statute defines a criminal offense, not a civil cause of action:

> If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or

4

> If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured-
>
> They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

There is no evidence that anyone committed that offense, or that anyone conspired to commit it.

There is no genuine issue of material fact, and the respondent is entitled to the dismissal of this claim as a matter of law.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

This is an Ohio state law cause of action which the Ohio Supreme Court defined in the syllabus for *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of America*, (1983), 6 Ohio St.3d 369, 453 N.E.2d 666:

> One who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

The opinion in that case further explains requirements for an actionable claim at pp.374-375:

> Our approach in identifying the scope of a cause of action pleading intentional infliction of emotional distress is similar in some respects to that which we set forth in Paugh, supra. Thus, we hold that in order to state a claim alleging the intentional infliction of emotional distress, the emotional distress alleged must be serious. As Dean Prosser reasoned in his learned treatise, "[i]t would be absurd for the law to seek to secure universal peace of mind, and many interferences with it must of necessity be left to other agencies of social control. 'Against a large part of the frictions and irritations and clashing of temperaments incident to participation in a community life, a certain toughening of the mental hide is a better protection than the law could ever be.' But this is a poor reason for denying recovery for any genuine, serious mental injury." Prosser, Law of Torts (4 Ed.1971) 51, Section 12 (quoting Magruder, Mental and Emotional Disturbance in the Law of Torts [1936], 49 Harv.L.Rev. 1033, 1035).

5

The standard we adopt in our recognition of the tort of intentional infliction of serious emotional distress is succinctly spelled out in the Restatement as follows:

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Restatement of the Law 2d, Torts (1965) 71, Section 46(1).

This approach discards the requirement that intentionally inflicted emotional distress be "parasitic" to an already recognized tort cause of action as in Bartow. It also rejects any requirement that the emotional distress manifest itself in the form of some physical injury. This approach is in accord with the well-reasoned analysis of a substantial number of jurisdictions throughout the nation. See Prosser, supra, at 59, footnote 20.

With respect to the requirement that the conduct alleged be "extreme and outrageous," we find comment d to Section 46 of the Restatement, supra, at 73, to be instructive in describing this standard:

" * * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

"The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. See Magruder, Mental and Emotional Disturbance in the Law of Torts, Harvard Law Review 1033, 1053 (1936). * * * "

The claimant failed to provide any evidence to support findings that (a) a co-employee engaged in "extreme and outrageous conduct," (b) any allegedly wrongful conduct proximately caused the claimant's serious emotional distress, or (c) the co-employee committed any allegedly

wrongful act in the scope of his or her employment as a basis for *respondeat superior* liability. Indeed, if she had provided sufficient evidence to create a genuine issue of material fact for each of those essential elements for this claim, the Ohio workers compensation laws would bar any recovery. See Rev. Code §4123.74:

> Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, or during the interval the employer is a self-insuring employer, whether or not such injury, occupational disease, bodily condition, or death is compensable under this chapter.

There is no genuine issue of material fact, and the respondent is entitled to a summary judgment dismissal of this claim.

<u>CONCLUSION</u>

Having carefully considered all the evidentiary materials and the arguments of both parties, this arbitrator concludes that the respondent has demonstrated its right to a summary judgment dismissal of all the claims.

Accordingly, this arbitrator enters a final award for the respondent and against the clamant on all the submitted claims. Pursuant to the arbitration provisions in the applicable employment agreement, the respondent employer shall pay all costs for this arbitration proceeding. The arbitrator has deposited copies of this Final Award in the U.S. Mails addressed to the *pro se* claimant and the respondent's counsel on this first day of September, 2014.

Dated: September 1, 2014      *Richard M. Markus*

                                      Richard M. Markus, Sole Arbitrator